**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| PATRICIA A. FRIEND,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>        Defendant. | 2:17-cv-01312-MMD-VCF<br>**REPORT AND RECOMMENDATION** |

Before the court are Patricia Friend's Motion for Reversal and/or Remand (ECF No. 12) and the Commissioner's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF No. 13). For the reasons stated below, the Court recommends that the Commissioner's Cross Motion to Affirm be granted.

## I.  STANDARD OF REVIEW

Social security claimants have a constitutionally protected property interest in social security benefits. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990); *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Social Security Act authorizes the District Court to review the Commissioner's final decision denying benefits. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. The court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is defined as "more than a mere scintilla" of evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence).  If the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  This means that the Commissioner's decision will be upheld if it has any support in the record.  *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (stating that the court may not reweigh evidence, try the case de novo, or overturn the Commissioner's decision if the evidence preponderates against it).

## II.   DISCUSSION

The ALJ found that Friend suffers from two severe impairments—malignant hypertension and insulin-dependent diabetes mellitus—under 20 CFR 404.1520(c).  (AR 20).  Considering her impairments, the ALJ found that Friend can perform a limited range of light work.  (AR 21).  She can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday with normal breaks.  (*Id.*).  When the vocational expert considered a hypothetical person with these limitations, the vocational expert stated that the person could perform light work, including Friend's past job as a hospital admitting clerk.  (AR 27, 58-59).  The ALJ gave minimal weight to the opinion of treating physician Dr. Andracki, outlined in Exhibits 9F and 10F.  (AR 25).  Dr. Andracki stated that Friend can lift ten pounds occasionally and five pounds frequently, sit for fifteen minutes at a time, stand for thirty minutes at a time, needs to elevate her legs for most of an eight-hour work day, and cannot walk a block at a reasonable pace.  (AR 511-12).  The vocational expert stated that a hypothetical person with these limitations would not be able to perform any jobs in the national economy.  (AR 59).

Friend argues that the ALJ erred by giving minimal weight to the opinion of Dr. Andracki and Friend's own pain and symptoms testimony. (ECF No. 12 at 10-24). However, the Court defers to the ALJ when the ALJ's decision has support in the record or the evidence is open to multiple interpretations. Given this deferential standard, the Court cannot say that the ALJ's decision lacks the support of the record.

**A. The ALJ Did Not Err By Rejecting Dr. Andracki's Opinion**

"A treating physician's opinion is entitled to 'substantial weight.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Additionally, treatment notes are a "medical opinion" when they contain statements describing a physician's judgement about the nature and severity of the claimant's impairments, including symptoms, diagnosis, and prognosis. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 n. 1 (9th Cir. 2015) (stating that a treating physician's clinical progress notes are "medical opinion").

However, the ALJ need not automatically accept a treating physician's opinion. To reject the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Opinions of non-treating or non-examining physicians constitute substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ can also point to inconsistencies between the claimant's limitations as described by a physician and the claimant's

daily activities to satisfy the substantial evidence standard. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding a denial of benefits because the doctor's described limitations were inconsistent with the plaintiff's daily activities running a household and raising two young children).

In this case, the ALJ's decision that Friend had the residual functional capacity (RFC) necessary to perform light work is supported by the record. The ALJ gave the most weight to the opinion of non-examining physician, Dr. Arnow, (AR 25), outlined in Exhibit 7A and the residual function capacity he described. (AR 98-100). Dr. Arnow's opinion constitutes substantial evidence because it is consistent with the opinion of examining physician Dr. Mumford, (Exhibit 8F), although Dr. Arnow found that Friend had additional environmental restrictions. (AR 25). The ALJ gave "no weight" to treating physician Dr. Andracki's opinion "because it is conclusory and not supported by his clinical findings." (AR 26). Friend argues that the ALJ, as a lay person, could not interpret Dr. Andracki's treatment notes for himself. (ECF No. 12 at 12). However, when presented with contradicting medical evidence, as here, the ALJ is "responsible for determining credibility and resolving conflicts in medical testimony," which involves considering and according weight to the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Evidence in the record supports the ALJ's analysis of the conflicting opinions of the physician.

Further, Friend's treatment history, presented in Dr. Andracki's treatment notes (Exhibit 11F), supports the ALJ's RFC. Dr. Andracki's treatment notes indicated that Friend's headaches are controlled by her medication regime. (AR 507; s*ee, e.g.*, AR 564 ("Amitriptyline is helping with her headaches"); AR 604 (Friend denied headaches); AR 615 (Friend denied headaches); and AR 651 (Friend denied headaches)). Dr. Andracki's treatment notes do not indicate that Friend has uncoordinated gait or ulcers. (AR 26). Further, Dr. Andracki's treatment notes do not show persistent edema and, on several dates, the medical examiner did not note the presence of edema. (*See, e.g.*, AR 650 (February 14, 2014: Certified Advance Practice Nurse (APN-C) Ida Plaza noted that Friend had no edema, normal range of motion, intact gait, normal station, normal stability, normal muscle strength and tone, normal curvature in the

spine, intact sensation, intact cranial nerves, 5/5 strength in her extremities);  AR 431 (February 25, 2014: Dr. Arik reported that Friend had a normal gait and spine); AR 427 (March 17, 2014: Dr. Arik noted that Friend had a normal spine and gait); AR 422 (April 14, 2014: Dr. Tali Arik reported that Friend had a normal spine and gait);) AR 595 (December 30, 2014: Dr. Barnett noted that Friend had no edema and intact gait); AR 589 (February 10, 2015: Dr. Barnett noted that Friend had no edema, normal range of motion in her lower extremities, intact gait, and normal station); AR 552 (April 13, 2016: Certified Nurse Practitioner (NP-C) Katherine Tonnies reported that Friend had pitting edema in her right leg, mild tenderness behind her right knee, minimal edema in her left leg, and normal gait); AR 536 (June 8, 2016: Tonnies noted Friend and no edema and normal gait and strength); AR 528 (June 27, 2016: Tonnies noted that Friend had 1-2+ bilateral pitting edema in her lower extremities and normal gait and strength); AR 520 (July 6, 2016: Tonnies noted that Friend had 1+ bilateral pitting edema and normal gait and strength). This evidence supports the ALJ giving minimal weight to Dr. Andracki's RFC.

The ALJ found Friend's daily activities inconsistent with Dr. Andracki's conclusions, providing more support for his decision to reject Dr. Andracki's opinion.  Friend helps her children get ready for school, prepares breakfast, walks her children to the bus stop, performs her own personal care, does household chores, and grocery shops on her own for about an hour a week. (AR 220-23).  She also swims biweekly and attends her children's soccer games.  (AR 223-24).  The facts in the record are inconsistent with Dr. Andracki's opinion that Friend cannot walk a block at a reasonable pace or stand for more than fifteen minutes.

Dr. Arnow's opinion constitutes substantial evidence because it is consistent with examining physician Dr. Mumford's opinion.  "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ gave "more weight" to Dr. Arnow's opinion "because he had the opportunity to review additional medical records."  (AR 25).

Dr. Arnow's conclusions are consistent with Dr. Mumford's opinion, except Dr. Arnow thought Friend has greater environmental restrictions. (AR 25). During Dr. Mumford's examination, he noted that Friend ambulated without an assistive device, sat without difficulty or discomfort, had normal mental status, and had normal range of motion in her extremities. (AR 499-500). Because Dr. Arnow's opinion is consistent with Dr. Mumford's opinion and Friend's self-described daily activities, it constitutes substantial evidence. Substantial evidence in the record supports the ALJ rejecting Dr. Andracki's opinion.

### B. The ALJ Did Not Err By Rejecting Friend's Pain Testimony

When making disability determinations, the ALJ must assess the credibility of the claimant and medical experts. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else unemployment benefits would be available for the asking."). When assessing a claimant's pain and limitations testimony, the ALJ uses a two-step process. First, the claimant has the burden of proving a medical condition that is reasonably expected to cause some pain. *Id.* at 602. Once the claimant meets that burden, the ALJ may reject the pain testimony if the ALJ provides specific findings that convincingly justify the decision. *See Id.* at 602-04. An ALJ may not reject a claimant's pain testimony just because the claimant does not manifest pain at the hearing, does not take pain medicine for a good reason, or cannot provide object medical evidence to support the described pain. *Id.* at 602-04. The ALJ may reject a claimant's pain testimony because it is inconsistent with the claimant's daily activities, or the claimant fails to seek treatment or follow treatment instructions. *Id.* at 603-04.

In this case, the ALJ found that Friend's impairments could reasonably cause some of her symptoms but ultimately rejected Friend's pain testimony because it is inconsistent with her daily activities and other medical opinions, and Friend failed to follow her doctor's treatment instructions. (AR 22, 25). As described above, the ALJ permissibly found that Friend's daily activities are inconsistent with the limitations described by Friend and Dr. Andracki. Further, as the ALJ noted, Friend failed to use Lantus as her doctor prescribed to bring her blood sugar below 200. (AR 547). Friend also left the

emergency room against medical advice when she had pneumonia, (AR 25), although she stated that she had to leave to take care of her disabled daughter. (ECF No. 12 at 22). These reasons meet the standard described in *Fair*; therefore, the ALJ did not err by rejecting Friend's pain and symptoms testimony.

### III.   CONCLUSION

The ALJ did not err by giving minimal weight to Dr. Andracki's opinion and rejecting Friend's pain and symptoms testimony.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Friend's Motion for Reversal and/or Remand (ECF No. 12) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross-Motion to Affirm (ECF No. 13) be GRANTED.

DATED this 5th day of June, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE